UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| KIRK CURLS,<br><br>                    Plaintiff,<br>v.<br><br>CLARK COUNTY SCHOOL DISTRICT,<br><br>                    Defendant. | Case No. 2:16-cv-00979-JAD-PAL<br><br>**SCREENING ORDER** |

This matter is before the court on a screening Plaintiff Kirk Curls' Complaint (ECF No. 7). This screening is referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and LR IB 1-3 of the Local Rules of Practice.

After granting a litigant's request to proceed *in forma pauperis* ("IFP"), a federal court must screen the complaint and any amended complaints filed prior to a responsive pleading pursuant to § 1915(e). *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc) (§ 1915(e) applies to "all in forma pauperis complaints"). If the complaint states a valid claim for relief, the court will direct the Clerk of the Court to issue summons to the defendant(s) and the plaintiff must then serve the summons and complaint within 90 days. *See* Fed. R. Civ. P. 4(m).

Allegations in a *pro se* complaint are held to less stringent standards than formal pleading drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Hebbe v. Pliler*, 627 F.3d 338, 342 n.7 (9th Cir. 2010). However, *pro se* litigants "should not be treated more favorably than parties with attorneys of record," *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986); rather, they must follow the same rules of procedure that govern other litigants. *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995).

/ / /

/ / /

I. **FACTUAL ALLEGATIONS AND CLAIMS FOR RELIEF**

Mr. Curls is a 56-year-old African-American male and former employee of Defendant Clark County School District ("CCSD"). *See* Compl. (ECF No. 7) at 1. The complaint alleges that he was employed as a food service worker in the bakery department of CCSD's Food Service/Central Kitchen. *Id*. at 2. Curls began working in August 23, 2013, as a part-time employee. *Id*. at 3. In January or February 2015, his supervisor, Wanda Gambino, told a group of bakery employees that full time positions would soon be available. *Id*. Ms. Gambino allegedly told the bakery employees that "Mexicans will get the jobs first because I can work them til [sic] they drop" and "[w]hy get U.S. citizens when you can get Hispanics cheap." *Id*. Gambino never posted the open positions through the employment office and, instead, selected the Hispanic employees she wanted to fill the positions without opening the positions to competitive bidding. *Id*. Although CCSD requires employees to speak and understand English, Curls claims that many of the Hispanic workers who were selected for the full time jobs did not speak or understand English. *Id*. He alleges he was "highly qualified for the full time jobs but was denied the opportunity to apply." *Id*.

On February 3, 2015, Mr. Curls filed a charge with the Equal Employment Opportunity Commission ("EEOC"). *Id*. He also complained to his supervisors about "discriminatory and harassing conduct" and "racially deplorable working conditions;" however, CCSD failed to take corrective action. *Id*. at 5. He alleges that several CCSD supervisors "instructed the Hispanic employees (who spoke and understood English) to spy on Mr. Curls and to report back to them if Mr. Curls ever mentioned his EEOC charge." *Id*. Although he had good evaluations and no disciplinary infractions prior to filing the EEOC charge and complaining to management, Curls was terminated on March 11, 2015, for failing to sign a document memorializing a confrontation with a manager. *Id*. at 3–5.

Pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17, and Nevada's anti-discrimination laws, the complaint asserts that CCSD discriminated and retaliated against Mr. Curls on the basis of national origin because he is "African-American

///

and as such is not a member of the preferred national origin, Hispanic." *Id*. at 4. Curls seeks compensatory and punitive damages.

For the reasons discussed below, the court finds that the complaint states colorable claims for violations of Title VII and Nevada's anti-discrimination laws.

## II.  DISCUSSION

### A.  Legal Standard

Federal courts are required to dismiss an IFP action if the complaint fails to state a claim upon which relief may be granted, is legally "frivolous or malicious," or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).  The standard for determining whether a plaintiff fails to state a claim upon which relief can be granted under § 1915 is the same as the standard under Rule 12(b)(6) of the Federal Rules of Civil Procedure[1] for failure to state a claim.  *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012).  Review under Rule 12(b)(6) is essentially a ruling on a question of law.  *N. Star Intern. v. Ariz. Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983); Fed. R. Civ. P. 12(b)(6) (authorizing district courts to dismiss a complaint for "failure to state a claim upon which relief can be granted").

A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *accord Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The simplified pleading standard set forth in Rule 8(a) applies to all civil actions with limited exceptions.  *Alvarez v. Hill*, 518 F.3d 1152, 1159 (9th Cir. 2008).  Although Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  This requires a plaintiff to state "enough facts to raise a reasonable expectation that discovery will reveal evidence" of the allegations charged.  *Cafasso, United States ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556).  Mere recitals of the elements of a cause of action supported only by conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 679–80.  A complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing

---

[1]  Any reference to a "Rule" or the "Rules" in this Order refer to the Federal Rules of Civil Procedure.

party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Secondly, where the claims in the complaint have not crossed the line from plausible to conceivable, the complaint should be dismissed. *Twombly*, 550 U.S. at 570. Stated differently, the factual allegations "must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216.

**B. Analysis**

Title VII prohibits employers from discharging or discriminating against any individual on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2(a)(1). Slightly broader, Nevada's anti-discrimination law also prohibits an employer from discharging or discriminating against any individual "because of his or her race, color, religion, sex, sexual orientation, gender identity or expression, age, disability or national origin." NRS 613.330(1)(a). In addition, both Title VII and Nevada law prohibit retaliation. *See* 42 U.S.C. § 2000e-3(a); NRS 613.340. Nevada looks to federal discrimination and retaliation cases for guidance in applying state law. *See, e.g.*, *Pope v. Motel 6*, 114 P.3d 277, 281 (Nev. 2005) (relying on Title VII cases to interpret NRS 613.340); *Hirshhorn v. Sizzler Restaurants Int'l, Inc.*, 913 F. Supp. 1393, 1398 (D. Nev. 1993) (relying on Title VII cases to interpret NRS 613.330). Because discrimination and retaliation claims under Nevada law are substantially similar to federal claims under Title VII, the court's discussion will focus on Title VII. *See, e.g.*, *Delgadillo v. Fiesta Palms, LLC*, No. 2:09-cv-1772-LDG-GWF, 2011 WL 1067305 (D. Nev. Mar. 21, 2011); *Kindinger v. Boulder Station, Inc.*, No. 2:06-cv-00896-RLH-LRL, 2007 WL 1796247 (D. Nev. June 19, 2007); *cf. Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996) (using the same analysis for plaintiff's federal and state law claims because California courts rely upon federal interpretations of Title VII to interpret analogous provisions of the California statutes prohibiting discrimination).

   1. Discrimination Claim

To state a claim for discrimination in violation of Title VII, a plaintiff must allege: (1) he belonged to a protected class; (2) he was qualified for his job; (3) he experienced an adverse employment action; and (4) similarly situated employees outside of his protected class were

"treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010) (quoting *Peterson v. Hewlett–Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004)).

Although Title VII does not define "national origin," "the legislative history and the Supreme Court both recognize that 'national origin' includes the country of one's ancestors." *Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 154 F.3d 1117, 1119 (9th Cir. 1998) (citation omitted); *see also Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88 (1973) (noting that the term "national origin" refers "to the country where a person was born, or, more broadly, the country from which his or her ancestors came"); 29 C.F.R. § 1606.1.  National origin discrimination includes discrimination against American workers in favor of foreign workers. *See, e.g.*, *Turney v. Hyundai Const. Equip. USA Inc.*, 482 F. App'x 259, 260 (9th Cir. 2012) (finding that a Caucasian-American plaintiff belonged to a protected class for purposes of his national origin discrimination claim) (quoting *Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 659 (9th Cir. 2002)); *Hawn v. Exec. Jet Mgmt., Inc.*, 546 F. Supp. 2d 703, 717 (D. Ariz. 2008) (Caucasian-American employees were members of protected class for purposes of their claims for race and national origin discrimination under Title VII), *aff'd*, 615 F.3d 1151 (9th Cir. 2010); *see also* EEOC Enforcement Guidance on National Origin Discrimination, No. 915.005 (2016).[2]

Here, Mr. Curls alleges that he was discriminated against on the basis of his African-American national origin, which is a protected class for the purposes of Title VII. *See* Compl. at 1. He alleges that he was qualified for the full-time food service position as he was already employed in a part-time position in CCSD's bakery. *Id.* at 3–4. He suffered an adverse employment action based on CCSD's failure to post the full-time position through the employment office or promote him to the full-time position. He alleges that less qualified Mexican employees, who were not United States citizens, were treated more favorably because they were given the full-

---

[2] *Fortino v. Quasar Co.*, 950 F.2d 389, 392 (7th Cir. 1991) (stating that Title VII protects Americans from discrimination in favor of foreign workers); *Fulford v. Alligator River Farms, LLC*, 858 F. Supp. 2d 550, 557–60 (E.D.N.C. 2012) (finding that plaintiffs adequately alleged Title VII claims based on their national origin, American, where defendant treated them differently, and less favorably, than Mexican workers); *Thomas v. Rohner-Gehrig & Co.*, 582 F. Supp. 669, 674 (N.D. Ill. 1984) (holding that "a plaintiff discriminated against because of birth in the United States has a Title VII cause of action").

time positions. Mr. Curls has stated a colorable national origin discrimination claim under Title VII and Nevada law.

### 2. Retaliation Claim

Employers may not retaliate against employees who have "opposed any practice made an unlawful employment practice." 42 U.S.C. § 2000e-3(a); *see also Davis v. Team Elec. Co.*, 520 F.3d 1080, 1093 (9th Cir. 2008); NRS 613.340. To state a retaliation claim in violation of Title VII, a plaintiff must allege: (1) he engaged in a protected activity, (2) he was subject to an adverse employment action, and (3) a causal exists link between the protected activity and the employer's adverse action. *Davis*, 520 F.3d at 1093–94; *see also Pope*, 114 P.3d at 281. "Protected activities" include the filing of charges with the EEOC. *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 506–07 (9th Cir. 2000). An adverse employment action is one that "materially affects the compensation, terms, conditions, or privileges of employment." *Davis*, 520 F.3d at 1089.

In this case, Mr. Curls alleges that he engaged in two protected activities: filing a charge with the EEOC and complaining to his supervisors about discriminatory conduct. Compl. (ECF No. 7) at 3, 5. He suffered an adverse employment action when he was terminated from his position in March 2015. *Id*. at 3. Mr. Curls alleges he had good evaluations and no disciplinary infractions prior to filing the EEOC charge and complaining to management, but was terminated shortly after he engaged in the protected activities. *Id*. at 4–5. He has satisfied the pleading requirements for a retaliation claim against CCSD at this early stage in the action.

Based on the foregoing,

**IT IS ORDERED**:

1. Plaintiff Kirk Curls' discrimination and retaliation claims under Title VII and Nevada anti-discrimination law shall proceed against Defendant Clark County School District.
2. The Clerk of the Court shall issue summons to Defendant Clark County School District.
3. Mr. Curls is advised to carefully review Rule 4 of the Federal Rules of Civil Procedure in order to properly serve Defendant. Pursuant to Rule 4(m), he must complete service by **June 26, 2017**.

4. From this point forward, Curls shall serve upon Defendant or, if appearance has been entered by counsel, upon the attorney, a copy of every pleading, motion, or other document filed with the Clerk of the Court pursuant to LR IC 1-1 and 4-1 of the Local Rules of Practice.  In accordance with LR IC 4-1(d), the parties shall include with each filing a certificate of service stating that a true and correct copy of the document was served on an opposing party or counsel for an opposing party and indicating how service was accomplished.  The court may disregard any paper received by a district judge or magistrate judge that has not been filed with the Clerk of the Court, and any paper received by a district judge, magistrate judge, or the Clerk of the Court that fails to include a certificate of service.

Dated this 31st day of March, 2017.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE